# In the United States Court of Appeals for the Fifth Circuit

KOSHY MATHEWS MATHAI,
*Plaintiff-Appellant*,

v.

UNITED STATES OF AMERICA,
*Defendant-Appellee*.

On Appeal from the United States District Court
for the Western District of Texas, Waco Division

**BRIEF OF APPELLANT**

Koshy Mathews Mathai, M.D.
*Pro Se Appellant*
16325 Donoher Drive
Austin, Texas 78717
(504) 231-2833
koshymmathai@gmail.com

May 23, 2026

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Fifth Circuit Rule 28.2.1, Appellant certifies that the following persons and entities may have an interest in the outcome of this appeal:

1. **<u>Plaintiff-Appellant</u>**: Koshy Mathews Mathai, M.D.

2. **<u>Defendant-Appellee</u>**: United States of America.

3. **<u>District Judge</u>**: Hon. Alan D. Albright.

4. **<u>Magistrate Judge</u>**: Hon. Derek T. Gilliland.

5. **<u>Counsel for Defendant-Appellee in the district court</u>**: David B. Goode; Matthew M. Mueller.

6. **<u>Counsel for Defendant-Appellee in this appeal</u>**: Matthew M. Mueller.

7. No publicly held corporation owns 10% or more of any party.

Respectfully submitted,

*/s/ Koshy Mathews Mathai, M.D.*
Koshy Mathews Mathai, M.D.

*Pro Se Appellant*

May 23, 2026

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is warranted. This appeal presents an important FTCA question: whether a district court may convert later evidence of a pleaded tort into the supposed gravamen of the claim, then recharacterize the case as a reliance-based misrepresentation action barred by 28 U.S.C. § 2680(h). It also presents a practical appellate question: whether this Court can restore the case to the correct track by holding only that the pleaded claim, as framed by Appellant, is not barred on its face by § 2680(h), while leaving any remaining merits questions for remand. Oral argument would materially assist the Court because the case can be corrected narrowly. This Court need not decide whether Appellant ultimately proves IIED, whether any other FTCA exception applies, or whether any Rule 12(b)(6) defense may later have force. The threshold problem is simpler: the district court resolved the case through a faulty § 2680(h) assumption, treated later evidence as the tort's gravamen, and redirected the case into a reliance-based claim Appellant did not plead. The proper correction is to clear away that assumption and return the case to the district court under the correct inquiry.

## STATEMENT OF RELATED CASES

Appellant is aware of a separate appeal in the United States Court of Appeals for the Federal Circuit arising from the United States Court of Federal Claims, Appeal No. 26-1041. That appeal presents a distinct Fifth Amendment takings theory, invokes different jurisdictional statutes, depends on different legal standards, and seeks different relief. The fact that some historical events appear in both disputes does not collapse them into the same claim. This appeal does not seek payment of a retention incentive, enforcement of any compensation promise, or compensation for a taking. It seeks tort damages under the Federal Tort Claims Act for intentional infliction of emotional distress. Claims seeking distinct relief under distinct jurisdictional grants do not collapse into one case merely because some background facts overlap. See *Golden Pacific Bancorp v. United States*, 15 F.3d 1066, 1071-72 (Fed. Cir. 1994); *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1551-52 (Fed. Cir. 1994).

The Federal Circuit appeal concerns whether, assuming VA acted through valid appointment and compensation authority, the Government nevertheless owed just compensation for an alleged acquired-use diversion of specialized labor; this appeal concerns whether a separate pre-employment bypass of mandatory correspondence-accountability procedures supports Texas emotional-distress damages under the FTCA. Neither theory requires either court to award the remedy reserved to the other forum.

# TABLE OF CONTENTS

Certificate of Interested Persons ...................................................................2

Statement Regarding Oral Argument .........................................................3

Statement of Related Cases...........................................................................4

Table of Contents ...........................................................................................5

Table of Authorities .......................................................................................7

Jurisdictional Statement ..............................................................................10

Statement of the Issues.................................................................................10

Statement of the Case and Facts ...............................................................12

Summary of the Argument..........................................................................17

Standard of Review .......................................................................................20

Argument........................................................................................................22

    I. The District Court decided a different case than the one pleaded...................22

    II. The later non-award of a retention incentive is evidence, not gravamen and not remedy. ........................................................................................23

    III. In the Fifth Circuit, remedy may illuminate injury, but conduct still defines the gravamen.................................................................................25

    IV. The federal policy allegations identify the omission as operational and mandatory; they do not attempt to create FTCA liability from federal policy alone. ................................................................................................28

V. The FTCA cases strongly support treating the pleaded independent operational wrong as distinct from any excepted tort appearing elsewhere in the narrative. .................................................................................................30

VI. The Rule 12(b)(1) dismissal was premature because the court drew inferences against Appellant and denied targeted jurisdictional development. .32

VII. This Court should not affirm on alternative Rule 12(b)(6) grounds not decided below. ...........................................................................................34

Conclusion ..............................................................................................38

Certificate of Service .................................................................................41

Certificate of Compliance ...........................................................................42

# TABLE OF AUTHORITIES

**Cases**

*Block v. Neal, 460 U.S. 289 (1983)*......................................................11, 19, 27, 30

*Brinkmann v. Dallas County Deputy Sheriff Abner, 813 F.2d 744 (5th Cir. 1987)*23

*Brownback v. King, 592 U.S. 209 (2021)* ...........................................................35

*Commercial Union Insurance Co. v. United States, 928 F.2d 176 (5th Cir. 1991)*

.................................................................................................................11, 19, 25, 31

*Dickson v. United States, 11 F.4th 308 (5th Cir. 2021)* ........................11, 19, 32, 35

*Douglass v. United Services Automobile Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en*

*banc)*....................................................................................................................37

*Golden Pacific Bancorp v. United States, 15 F.3d 1066 (Fed. Cir. 1994)* .........3, 36

*Google LLC v. Oracle Am., Inc., 141 S. Ct. 1183 (2021)*.......................................21

*GTE Sw., Inc. v. Bruce, 998 S.W.2d 605 (Tex. 1999)* .............................................35

*Hoffmann-La Roche, Inc. v. Zeltwanger, 144 S.W.3d 438 (Tex. 2004)*...................35

*Home Builders Ass'n of Mississippi, Inc. v. City of Madison, 143 F.3d 1006 (5th*

*Cir. 1998)* .......................................................................................................35, 37

*Indian Towing Co. v. United States, 350 U.S. 61 (1955)* .......................................29

*Johnson v. Atkins, 999 F.2d 99 (5th Cir. 1993)*.....................................................23

*Life Partners Inc. v. United States, 650 F.3d 1026 (5th Cir. 2011)* .......................26

*Loveladies Harbor, Inc. v. United States, 27 F.3d 1545 (Fed. Cir. 1994)*..........3, 36

*Martin v. United States*, 605 U.S. 395 (2025)..................................................17, 26, 29

*McNeily v. United States*, 6 F.3d 343 (5th Cir. 1993) ......................11, 19, 22, 25, 31

*Metropolitan Life Insurance Co. v. Atkins*, 225 F.3d 510 (5th Cir. 2000) .11, 25, 31, 33

*United States Postal Service v. Konan*, 607 U.S. ___ (2026) ......................18, 20, 33

*Pullman-Standard v. Swint*, 456 U.S. 273 (1982)..................................................21

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001) ........................... 20, 32-33

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) ...................................35, 37

*Saraw Partnership v. United States*, 67 F.3d 567 (5th Cir. 1995) ........11, 19, 25, 31

*Sheridan v. United States*, 487 U.S. 392 (1988) .........................................11, 19, 30

*Thomas v. Arn*, 474 U.S. 140 (1985) .....................................................................37

*Truman v. United States*, 26 F.3d 592 (5th Cir. 1994).....................11, 19, 22, 25, 31

*United States v. Neustadt*, 366 U.S. 696 (1961) ....................................11, 19, 27, 30

*Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735 (Tex. 2003) ...........................35

*Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981).........................................20, 32

**Statutes and Rules**

28 U.S.C. § 1291 ..................................................... 10

28 U.S.C. § 1346(b)(1)..................................................10

28 U.S.C. § 2674 ..................................................... 29

28 U.S.C. § 2680(a) .................................................20, 28

28 U.S.C. § 2680(h) .................................. 4, 10, 17, 20-23, 28, 30-32, 34-35, 38-39

28 U.S.C. § 636(b)(1)(C) .................................................37

Fed. R. App. P. 26.1 .................................................2

Fed. R. App. P. 32(a)(5).................................................42

Fed. R. App. P. 32(a)(6).................................................42

Fed. R. App. P. 32(a)(7)(B) .................................................42

Fed. R. App. P. 32(f).................................................42

Fed. R. Civ. P. 4(i)(4).................................................36

Fed. R. Civ. P. 12(b)(1)..................................... 10, 12, 14, 16-17, 20, 32, 35-36, 39

Fed. R. Civ. P. 12(b)(5).................................................12, 14, 36

Fed. R. Civ. P. 12(b)(6)..................................... 4, 12, 14, 16, 20, 34, 38

Fed. R. Civ. P. 72(b) .................................................37

5th Cir. R. 28.2.1 .................................................2

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1346(b)(1) because Appellant pleaded a tort claim against the United States under the Federal Tort Claims Act. After the magistrate judge recommended that Defendant's Rule 12(b)(1) motion be granted and the case dismissed without prejudice for want of subject-matter jurisdiction, ROA.507-512; the district court adopted that recommendation, granted the motion, dismissed the case without prejudice, and directed the clerk to close the case. ROA.535-536.

Appellant filed a timely notice of appeal on March 30, 2026. ROA.539-542. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the district court erred by recharacterizing Appellant's pleaded Texas intentional-infliction-of-emotional-distress claim as a reliance-based misrepresentation-by-omission claim and then dismissing under 28 U.S.C. § 2680(h).

2. Whether the district court further erred by treating the later non-award of a retention incentive as though it were the gravamen of the claim, even though the complaint and response used that later event only as later evidence bearing on the earlier policy-violating omission and the coercive course of conduct it enabled. ROA.450-452; ROA.319-320.

3. Whether the complaint, fairly read, sought only tort damages for emotional injury rather than payment, compelled processing, or recovery of a retention incentive.

4. Whether, under Fifth Circuit FTCA precedent, the conduct-based gravamen inquiry remains controlling even where the remedy sought may help illuminate the plaintiff's asserted injury.

5. Whether the First Amended Complaint alleged an independent operational omission in a mandatory VA correspondence-accountability system, rather than negligence in the communication of information, such that the FTCA's misrepresentation exception does not apply. ROA.305-308, 320; ROA.355-358; ROA.361-362; ROA.515-522.

6. Whether, under *Sheridan*, *Block*, *Neustadt*, *Commercial Union*, *McNeily*, *Metropolitan Life*, *Saraw*, *Truman*, and *Dickson*, a distinct claim based on independent governmental wrongdoing remains jurisdictionally viable even if an excepted tort appears elsewhere in the causal narrative.

7. Whether dismissal was premature where the district court ruled on the pleadings without resolving disputed jurisdictional facts, drew inferences against Appellant, and did not allow limited jurisdictional discovery directed to the operation and alleged bypass of the mandatory correspondence-accountability system. ROA.525-528.

8. Whether this Court should decline to affirm on alternative Rule 12(b)(6) theories the R&R expressly did not reach and the district court did not decide, and instead remand for the district court to address any remaining issues in the first instance after correcting the jurisdictional misframing. ROA.511; ROA.532-534; ROA.535-536.

## STATEMENT OF THE CASE AND FACTS

This FTCA appeal concerns a basic but dispositive error of characterization. The district court did not dismiss the IIED claim Appellant actually pleaded. It dismissed a different claim that it constructed from selected facts appearing in the complaint and then adopted the magistrate judge's reframing wholesale. ROA.510-511; ROA.535-536.

The procedural posture matters. The United States moved under Rules 12(b)(1), 12(b)(5), and 12(b)(6). ROA.421, 425. But the R&R resolved only Rule 12(b)(1) and expressly stated in footnote 2 that, because it found no subject-matter jurisdiction, it did not reach Rules 12(b)(5) or 12(b)(6). ROA.511. The district court then adopted the R&R wholesale. ROA.535-536.

Appellant applied in 2019 for a physician position in Pain Management at the Central Texas Veterans Health Care System. During recruitment discussions, the facility's Chief of Staff, Dr. Olawale Fashina, discussed a two-year recruitment incentive and indicated that continuation thereafter by way of retention incentive

was typically processed, while not contractually guaranteed. ROA.308-313; ROA.451-452. At the pre-employment stage, Appellant sent an August 22, 2019 email stating his understanding and adding: "If you feel that I have misunderstood anything at all, please let me know." ROA.313; ROA.452.

Dr. Fashina did not respond. Instead, he formalized the recruitment paperwork the next day. ROA.452; see also ROA.305-306, 313.

That non-response is the operative pre-employment act at the center of this case. The First Amended Complaint alleges that the silence occurred "in the setting of the mandatory VA policy to provide prompt responses," and that the omission was not merely conversational silence, but a bypass of a mandatory correspondence-accountability system requiring timely handling, routing, tracking, escalation, and review. ROA.305-306, 320; ROA.355-358; ROA.361-362; ROA.515-517, 521-522. The complaint further alleges that the silence was calculated to preserve deniability and disable institutional accountability at the pre-employment stage, when traceable institutional processing mattered most. ROA.320; ROA.515-517, 521-522.

The First Amended Complaint did not plead fraud, deceit, or contract interference. To the contrary, it expressly stated: "From the evidence I have, I cannot identify proof for misrepresentation, deceit, or interference with contract rights, however." ROA.306. The complaint instead pleaded a single Texas tort: intentional infliction of emotional distress. As pleaded, the actionable wrong was the intentional

or reckless abuse of mandatory accountability procedures, followed by a course of coercive professional harm and emotional injury. ROA.305-308, 316, 320; ROA.515-522.

The retention-incentive history appears in the pleading only as later evidence. Appellant alleged that he was lawfully hired for Pain Management, but was later pressured toward addiction-related duties and other materially different work. ROA.452-453; ROA.315-321. He alleged that the VA later did not initiate retention-incentive processing despite high performance, continued clinical need, and the same basic market conditions that had justified the earlier recruitment incentive. ROA.315-321. He alleged that these later events pointed back to the original policy-violating non-response because they showed how silence preserved deniability and prevented a traceable institutional record at the point when a response, denial, referral, or logged processing would have fixed accountability, before Appellant resigned secure employment, moved his family, and assumed a repayment obligation tied to the recruitment incentive. ROA.316-321; ROA.515-522.

The United States moved to dismiss under Rules 12(b)(1), 12(b)(5), and 12(b)(6), arguing as relevant here that the claim was barred by the FTCA's misrepresentation exception. ROA.421-438. In response, Appellant argued that the case did not arise from misrepresentation because the gravamen was not what any reply would have said; the gravamen was that no reply was given at all in a

mandatory-policy setting. ROA.451-453; ROA.319-320. He further argued that the directive at issue imposed operational duties of timeliness, logging, tracking, escalation, and overdue review, and that there was no discretion to bypass those accountability mechanisms altogether. ROA.457-458. He also argued that the later non-award of a retention incentive was evidence that the earlier silence had preserved deniability while Appellant was later pressured toward work different from the pain-management role for which he had been hired. ROA.451-453; ROA.319-320.

The magistrate judge nevertheless reframed the case. The Report and Recommendation stated that the "underlying chain of events" made misrepresentation "central" to the claim; that Appellant's August 22 email "only existed to confirm" an earlier representation; that absent the earlier representation the failure to reply "would have no effect" on Appellant's decision to accept the job; and that the injury arose "directly from his reliance on Dr. Fashina's representations regarding retention incentives and his later failure to correct those representations." ROA.510-511. In footnote 1, the R&R went further and stated: "The Court therefore construes his argument as a claim that Dr. Fashina made a material omission that the plaintiff relied upon." ROA.511. The R&R thus treated the case as a reliance-based misrepresentation claim arising from a failure to correct prior statements.

Appellant filed detailed objections. He argued that the R&R had changed the case by substituting a communicative theory for the operational omission actually pleaded. He emphasized that the pleaded duty was not a duty to "confirm," "correct," or communicate information for reliance, but a duty to comply with mandatory correspondence-handling and accountability procedures. ROA.515-522. He further argued that any response—approval, denial, or referral—would have engaged traceable accountability and defeated the deniability that silence uniquely preserves. ROA.515-522. He also argued that the later non-award of a retention incentive was later evidence that the original omission had been used to preserve deniability before the later role-misalignment facts became visible, not the remedy sought in the case. ROA.515-522. Appellant additionally requested targeted jurisdictional discovery if the district court believed the jurisdictional characterization turned on disputed facts concerning implementation, routing, logging, escalation, or bypass of the correspondence-accountability system. ROA.525-528.

The United States responded that without misrepresentation there could be no causation and no extreme-and-outrageous conduct and by attempting to inject alternative Rule 12(b)(6) theories that the R&R had not reached. ROA.532-534.

On March 10, 2026, the district court adopted the R&R, granted the Rule 12(b)(1) motion, dismissed the case without prejudice for want of subject-matter jurisdiction, and closed the case. ROA.535-536. This appeal followed.

16

# SUMMARY OF THE ARGUMENT

The judgment should be reversed insofar as it dismissed the case under Rule 12(b)(1) on the theory that § 2680(h) bars the claim as pleaded. The proper appellate disposition is reversal of that jurisdictional ruling and remand with instructions that any § 2680(h) argument be evaluated against the operational-omission theory actually pleaded, rather than against a substituted reliance theory. Only in the alternative, if this Court concludes that limited factual clarification is truly necessary to the jurisdictional analysis, should the case be vacated and remanded for tightly focused jurisdictional development on the actual claim pleaded.

This appeal turns on sequence: identify the claim actually pleaded, accept its well-pleaded allegations at this stage, apply § 2680(h) to that claim rather than to a substituted reliance theory, and remand any unresolved merits issues to the district court in the first instance. Recent Supreme Court FTCA decisions confirm the required discipline. Section 2680 contains discrete exceptions, and a court must apply the exception actually invoked to the claim actually pleaded. *Martin v. United States*, 605 U.S. 395, 401-05, 410 (2025). *Martin* reinforces that courts must apply the correct FTCA exception and legal framework, rather than allowing an erroneous threshold assumption to distort the analysis. Id. Nor may it use a disputed government characterization to defeat the complaint at the pleading stage; at dismissal, the complaint's allegations are accepted as true even where the

17

Government disputes them. *USPS v. Konan*, 607 U.S. ___, slip op. at 3 (2026). Those principles control here. The district court did not identify the pleaded operational omission and then ask whether that claim arises out of misrepresentation. It began with a substituted reliance theory and dismissed that substituted theory.

**First**, the complaint expressly disavowed misrepresentation and pleaded a distinct IIED theory resting on the pre-employment bypass of a mandatory correspondence-accountability system and the coercive course of conduct that omission later enabled. ROA.305-308, 320. The R&R nevertheless imported reliance, converted "omission" into "misrepresentation by omission," and treated incentive-related facts as if they were the core of the tort. ROA.510-511. That was not liberal construction. It was substitution.

**Second**, the later non-award of a retention incentive is evidence of the pleaded IIED theory, not what the claim arises out of. It is later evidence because it tends to show that Appellant had been lawfully hired for Pain Management but later pressured toward addiction-related duties and other materially different work, while leadership preserved deniability about the pre-employment correspondence-accountability bypass that preceded his entry into VA employment. ROA.315-321; ROA.515-522. It is not the duty-conferring event. It is not the requested remedy. Appellant does not seek an order requiring the government to award a retention incentive. He seeks emotional-distress damages under Texas tort law.

**Third**, the Fifth Circuit's gravamen inquiry is conduct-based, not remedy-controlled. The court asks what essential act spawned the damages, whether the focal point is communication or operational performance, and whether the chain of causation depends on misinformation. The remedy sought may help illuminate what injury the plaintiff claims to have suffered, and it may help expose attempts to disguise an economic compensation claim as something else. But remedy does not displace the conduct-based test. Here, both the pleaded conduct and the remedy sought point away from misrepresentation.

**Fourth**, Appellant does not claim that federal policy itself creates FTCA liability. The policy allegations matter because they identify the omission as operational, mandatory, structured, and institutionally routed rather than a mere conversational silence. They are relevant because the pleaded operational theory turns on the failure to intake, route, track, escalate, and timely process the August 22 correspondence within the accountability system Appellant identified. That is a legitimate use of the policy allegations in characterizing the conduct Appellant actually pleaded.

**Fifth**, *Sheridan*, *Block*, *Neustadt*, *Commercial Union*, *McNeily*, *Metropolitan Life*, *Saraw*, *Truman*, and *Dickson* strongly support treating a pleaded independent operational wrong as distinct from an excepted tort, even when an excepted tort appears elsewhere in the broader narrative.

**Finally**, this Court should not avoid the actual issue decided below by recharacterizing this appeal as forfeited or by affirming on Rule 12(b)(6) grounds not decided by the district court. This appeal does not ask the Court to resolve any discretionary-function issue under § 2680(a), any constitutional-exception question, any Tucker Act or Court of Federal Claims issue, or whether Appellant ultimately prevails on the merits of IIED. It asks the Court to decide the narrower question the district court actually decided: whether § 2680(h) facially bars this complaint as pleaded.

## STANDARD OF REVIEW

This Court reviews de novo a district court's dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction. *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981). The party invoking jurisdiction bears the burden to establish it, but on a facial Rule 12(b)(1) challenge the court accepts well-pleaded allegations as true and draws reasonable inferences in the plaintiff's favor. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Williamson*, 645 F.2d at 412-13.

The same pleading-stage discipline appears in the Supreme Court's recent FTCA decisions. In *USPS v. Konan*, the Court emphasized that because the case arose from dismissal of a complaint, the complaint's allegations were accepted as true although the Government disputed them. 607 U.S. ___ (2026). The same rule matters here because the R&R's § 2680(h) ruling depended not on accepting

Appellant's pleaded operational theory, but on drawing contrary inferences about why the August 22 email mattered, what duty was pleaded, and what injury the complaint sought to remedy.

That is the posture here. The district court did not conduct an evidentiary hearing, did not resolve disputed jurisdictional facts, and simply adopted the R&R's legal characterization of the complaint. ROA.535-536. To the extent Appellee tries to reframe the characterization issue as a mixed question, the historical facts are taken from the pleading and the real dispute is how those pleaded facts should be classified under § 2680(h). A reviewing court should separate factual and legal components where possible, and when a mixed question remains, the standard turns on whether answering it entails primarily legal or factual work. *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1199 (2021); *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982). Here the dispositive work is legal, so review remains de novo, with the pleaded facts taken as true.

To the extent this appeal also implicates the refusal to permit limited jurisdictional discovery before dismissal, that ruling should be reviewed for abuse of discretion. But where the denial rests on a mistaken characterization of the pleaded claim, remand is warranted because the threshold analysis proceeded under the wrong framework.

# ARGUMENT

## I. The District Court decided a different case than the one pleaded.

The district court's threshold error was not merely semantic. It was categorical. The First Amended Complaint pleaded a Texas intentional-infliction-of-emotional-distress claim based on a deliberate pre-employment bypass of mandatory correspondence-accountability procedures and the coercive course of harm that omission enabled. ROA.305-308, 316, 320. It expressly disavowed proof of "misrepresentation, deceit, or interference with contract rights." ROA.306.

The R&R did not ask whether that pleaded operational-omission claim arises out of misrepresentation under § 2680(h). Instead, it replaced the pleaded claim with a different one. It stated that Appellant's August 22 email "only existed to confirm" prior representations, that the non-response "would have no effect" absent those representations, and that the injury arose from reliance on retention-incentive statements and the later failure to correct them. ROA.510-511. Footnote 1 made the substitution express: "The Court therefore construes his argument as a claim that Dr. Fashina made a material omission that the plaintiff relied upon." ROA.511.

That is the wrong starting point. The § 2680(h) inquiry must identify the actual governmental conduct essential to the claim, not a more dismissible substitute. See *Truman v. United States*, 26 F.3d 592, 595 (5th Cir. 1994); *McNeily v. United States*, 6 F.3d 343, 347-48 (5th Cir. 1993). At the pleading stage, the court had to classify

22

Appellant's actual theory, not a more dismissible substitute. That matters because § 2680(h) does not bar every case containing silence, omission, or incentive-related background facts. It bars claims arising out of the enumerated torts Congress listed. The pleaded claim here arises out of an asserted operational accountability bypass and the emotional harm it set in motion, not out of reliance on misinformation. Liberal construction does not permit a court to recast a tort claim for emotional-distress damages into a claim for a benefit the plaintiff does not seek, or to treat later evidence as the gravamen of a different cause of action. *Pro se* status entitles a litigant to fair reading, not redrafting. See *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993). Nor does the Court invent arguments for a litigant. See *Brinkmann v. Dallas County Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987).

At bottom, Appellant asked the district court to adjudicate a Texas IIED claim under the FTCA based on a deliberate pre-employment accountability bypass and the severe emotional injury that conduct helped set in motion. He did not ask the court to enforce a promise, recover a retention incentive, or adjudicate a bait-and-switch claim sounding in reliance-based misrepresentation.

**II. The later non-award of a retention incentive is evidence, not gravamen and not remedy.**

The claim arises out of the policy-violating pre-employment non-response in a mandatory accountability setting and the coercive course of professional harm that omission later enabled. The later non-award of a retention incentive is relevant

because it helps show that the pre-employment omission was not innocuous. It tends to support the pleaded inference that the original silence was not innocuous, but preserved deniability for later role-manipulation and retention-processing decisions while leaving no traceable institutional record of the pre-employment accountability bypass.

But later evidence is not gravamen. Nor is it remedy. Appellant does not seek the retention incentive, does not seek compelled processing of that incentive, and does not ask this Court to convert the case into a compensation dispute. He seeks tort damages for emotional injury.

Put differently, the later retention-incentive history is not the source of the duty. The duty came from the mandatory prompt-response and accountability regime pleaded in the complaint. ROA.305-306, 320. Nor is the later non-award the source of the cause of action. The cause of action is IIED. The later non-award simply makes the earlier omission more probative of planning, deniability, and institutional bypass.

That later evidence sharpened the emotional injury and the foreseeability of the coercive course of conduct. It did not transform the tort into an incentive-pay case.

**III. In the Fifth Circuit, remedy may illuminate injury, but conduct still defines the gravamen.**

The Fifth Circuit's FTCA cases do not classify claims by caption alone, nor by damages requested alone. The court instead focuses on the conduct that actually caused the injury.

*Commercial Union* asks whether the chain of causation from the alleged governmental negligence to the injury depends on misinformation. *Commercial Union* Insurance Co. v. United States, 928 F.2d 176, 179 (5th Cir. 1991). *Saraw* and *Metropolitan Life* direct the court to identify the essential act that spawned the damages and determine whether the focal point of the claim is negligence in communication or negligence in the performance of an operational task. *Saraw Partnership v. United States*, 67 F.3d 567, 571 (5th Cir. 1995); *Metropolitan Life* Insurance Co. v. Atkins, 225 F.3d 510, 512-13 (5th Cir. 2000). *McNeily* explains that even a claim labeled as a different tort may still be barred if the underlying governmental conduct essential to the claim fairly reads as an excepted tort. *McNeily v. United States*, 6 F.3d 343, 347-48 (5th Cir. 1993). And *Truman* makes clear that the inquiry focuses on the conduct upon which the plaintiff's claim is based. *Truman v. United States*, 26 F.3d 592, 595 (5th Cir. 1994).

Remedy still matters, but in a narrower way. It can help reveal what injury the plaintiff says he actually suffered and whether the plaintiff is trying to recover the very economic benefit allegedly lost through misinformation. That is why a claim

seeking purely economic recovery for a denied benefit or similar reliance-based loss may sound in misrepresentation when the chain of causation depends on false information. *Life Partners* is a strong Fifth Circuit example. *Life Partners* Inc. v. United States, 650 F.3d 1026, 1032-33 (5th Cir. 2011).

The Government's contrary approach would make remedy and background facts do too much work. It would mean that any FTCA plaintiff who describes a communication-adjacent event, or who explains later economic context to show motive and injury, has automatically pleaded misrepresentation. That is not the Fifth Circuit's conduct-based gravamen test, and it is not how the Supreme Court treats FTCA exceptions.

In *Martin*, the Court treated § 2680's exceptions as discrete statutory instructions and remanded for the lower court to apply the proper inquiry without the mistaken assumption that had distorted its analysis. 605 U.S. 395 (2025). The same correction is needed here: once the substituted reliance assumption is removed, the question becomes whether the pleaded operational-omission claim itself arises out of misrepresentation. It does not.

This case is different in both conduct and remedy. Appellant does not seek the economic benefit discussed in the background facts. He does not seek payment of a retention incentive. He does not seek contract-style expectancy relief. He does not ask this Court to measure or award the market value of specialized medical labor.

The requested relief is for severe emotional-distress injury caused by distinct institutional conduct: the pre-employment bypass of mandatory correspondence-accountability procedures, with later role-manipulation facts pleaded only as evidence of foreseeability, deniability, causation, and emotional harm.

*Neustadt* illustrates the opposite category of case. There the plaintiffs sought recovery for the diminished value of property allegedly purchased in reliance on an inaccurate FHA appraisal. *United States v. Neustadt*, 366 U.S. 696, 706-11 (1961). The injury there was the economic loss caused by misinformation.

This case does not resemble *Neustadt*. Appellant does not premise liability on having relied on false information communicated by the government, and he does not seek the economic benefit discussed in the background facts.

That difference does not itself decide the case; remedy is not an absolute test. But it confirms that this is not a disguised compensation action.

When the conduct alleged is distinct and the remedy sought is emotional-distress damages rather than incentive pay, the district court may not treat every incentive-related fact as automatically converting the suit into a barred misrepresentation claim. *Block v. Neal*, 460 U.S. 289, 296-98 (1983).

**IV. The federal policy allegations identify the omission as operational and mandatory; they do not attempt to create FTCA liability from federal policy alone.**

Appellant does not contend that the FTCA itself creates liability merely because a federal directive was violated. Nor does this appeal present a discretionary-function issue under § 2680(a), any constitutional-authority exception question, or any claim to payment of a retention incentive. The sole question is whether the complaint actually pleaded is facially barred by § 2680(h), and the policy allegations matter only because they help identify the nature of the act or omission actually alleged.

The federal policy allegations matter here for a different reason. They help identify the nature of the act or omission actually alleged. VHA Directive 1216 states that correspondence is to be handled promptly; assigns senior leadership responsibilities for EDMS placement, daily review, status updates, and monitoring for timeliness; and describes correspondence processing as emphasizing accountability and progress toward zero overdue correspondence. ROA.355-358; ROA.361-362. The pleaded VA correspondence policy is therefore relevant to characterizing the omission as institutional, operational, structured, and routed through a mandatory accountability setting rather than as mere conversational silence. Here, that characterization is concrete: Appellant's theory turns on the alleged failure to intake the August 22 email into the correspondence system, route

28

it through the required channels, track it, escalate it if overdue, and create the traceable institutional accountability that a response, denial, referral, or logged processing would have generated. ROA.355-358; ROA.361-362; ROA.457-458; ROA.515-522; ROA.525-528.

That is a legitimate use of the policy allegations in characterizing the conduct Appellant actually pleaded. Appellant does not argue that the FTCA creates a federal correspondence tort or that federal policy alone substitutes for Texas tort law. He argues that the policy allegations help identify the conduct actually alleged and reinforce why the district court's misrepresentation reframing was mistaken. See *Indian Towing* Co. v. United States, 350 U.S. 61, 64-69 (1955).

That distinction also protects the FTCA's private-person requirement under 28 U.S.C. § 2674. Appellant does not ask this Court to impose liability because VA violated an internal directive as such. The directive identifies the nature of the conduct: a structured correspondence-accountability process allegedly bypassed at the intake, routing, tracking, escalation, and overdue-review stages. Texas law supplies the tort theory; the federal policy allegations identify the operational act or omission. That is consistent with *Martin*, which confirms that once an FTCA claim survives an applicable exception, the merits question is whether a private individual under like circumstances would be liable under state law. 605 U.S. 395, 403, 410 (2025).

**V. The FTCA cases strongly support treating the pleaded independent operational wrong as distinct from any excepted tort appearing elsewhere in the narrative.**

*Sheridan* is a critical guidepost. There, the Supreme Court held that a negligence claim was not barred by § 2680(h) even though the immediate injury was caused by an assault and battery. The Court explained that when the government's liability rests on an independent duty breached by other employees, the claim is not barred merely because an excepted tort also appears in the causal sequence. *Sheridan v. United States*, 487 U.S. 392, 401-03 (1988).

That reasoning is instructive here even though this case concerns misrepresentation rather than assault. The relevant question is whether Appellant has alleged an independent governmental wrong that matters apart from treating communication itself as the actionable tort. He has.

*Neustadt* does not require a contrary result. It bars claims whose injury is the very economic loss caused by reliance on misinformation. 366 U.S. at 706-11. But *Block* rejected reading *Neustadt* so broadly that any case involving some overlap with communication must be recast as misrepresentation. *Block* explains that where the facts have "two distinct aspects," partial overlap does not mean that if one theory is excepted, the other must be as well. 460 U.S. at 297.

The same point can be stated in § 2680(h)'s own terms. Congress listed specific intentional torts: assault, battery, false imprisonment, false arrest, malicious

prosecution, abuse of process, libel, slander, misrepresentation, deceit, and interference with contract rights. It did not list intentional infliction of emotional distress. That does not mean an IIED label defeats § 2680(h); labels do not control. But it does mean the court must identify the actual conduct upon which the IIED claim is based before importing an enumerated tort. The district court inverted that sequence. It found incentive-related silence, called that silence misrepresentation, then treated the IIED claim as jurisdictionally barred. The required sequence is the opposite: identify the pleaded conduct, determine whether the causal chain depends on misinformation, and only then decide whether the claim arises out of misrepresentation.

The Fifth Circuit cases point the same way. *Commercial Union* focuses the inquiry on whether the causal chain depends on misinformation. 928 F.2d at 179. *McNeily* confirms that labels do not control, but it also confirms that the court must identify the actual governmental conduct essential to the claim. 6 F.3d at 347-48. *Saraw* and *Metropolitan Life* ask whether the focal point is communication or operational performance. 67 F.3d at 571; 225 F.3d at 512-13. *Truman* recognizes that an excepted tort appearing in the background does not automatically swallow a distinct claim based on separate governmental wrongdoing. 26 F.3d at 595.

*Metropolitan Life* is especially important here. There, the district court treated the case as one of non-communication and dismissed under § 2680(h). The Fifth

Circuit reversed because the gravamen was not misinformation but the government's failure to perform an operational task it had undertaken. 225 F.3d at 512-13. The parallel here is direct: the R&R reduced the pleaded wrong to a failure to communicate, while the complaint pleaded a structured accountability failure with operational consequences.

*Dickson* confirms that IIED is not itself one of the intentional torts excepted by § 2680(h), and that a court may not erase a distinct IIED theory merely by locating some arguably communicative aspect somewhere in the overall story. *Dickson v. United States*, 11 F.4th 308, 313-15 (5th Cir. 2021).

Taken together, these cases strongly support Appellant's position. They require the Court to ask whether Appellant alleged an independent wrong distinct from reliance-based misinformation. He did. On that legal question, the answer does not require a mere procedural reset. It supports reversal of the Rule 12(b)(1) dismissal because § 2680(h) does not bar the claim as pleaded.

**VI. The Rule 12(b)(1) dismissal was premature because the court drew inferences against Appellant and denied targeted jurisdictional development.**

At the Rule 12(b)(1) stage, because the district court did not resolve disputed jurisdictional facts, the complaint's well-pleaded allegations had to be accepted as true and reasonable inferences drawn in Appellant's favor. *Williamson*, 645 F.2d at 412-13; *Ramming*, 281 F.3d at 161. The district court did the opposite. It inferred that the August 22 email "only existed to confirm" prior statements, that the non-

response "would have no effect" absent a communicative theory, and that the injury "arises directly" from later failure to correct representations. ROA.510-511. Those were adverse inferential moves against the pleader.

*Metropolitan Life* shows why that matters. There too, the district court built a chain of causation around non-communication. The Fifth Circuit reversed because, viewing the record favorably to the plaintiff, the essential act was operational failure, not misinformation. 225 F.3d at 512-13.

The error also came from isolating pieces of the complaint rather than viewing the pleaded sequence in context. The August 22 email, the non-response, the next-day formalization of recruitment paperwork, the mandatory correspondence-accountability allegations, the later repurposing, and the later non-processing of the retention incentive were pleaded as a sequence. The court separated those allegations, treated the email as merely a request to confirm a benefit, and then recast the whole case as reliance. But this case was dismissed at the pleading stage, so the complaint's allegations had to be accepted as true and reasonable inferences drawn in Appellant's favor despite the Government's contrary characterization. *USPS v. Konan*, 607 U.S. ___, slip op. at 3 (2026); *Ramming*, 281 F.3d at 161. Appellant also preserved a focused request for jurisdictional development. He identified, at a minimum, the offices and personnel responsible for intake, logging, routing, escalation, overdue review, and response deadlines under the pleaded

system, as well as the facility-level implementation of those correspondence-accountability requirements. ROA.525-528. That is targeted threshold discovery, not a fishing expedition.

This matters because the Government's position below depended on collapsing the alleged omission into a purely private failure to communicate. Limited jurisdictional discovery could confirm the opposite: that the non-response implicated an institutional correspondence-processing system with mandatory operational components. If so, that would reinforce Appellant's pleaded theory that the case sounds in operational omission rather than misrepresentation.

And even if the district court believed some phrasing in the complaint was imprecise, the proper course was not immediate dismissal. Where the underlying facts may support a viable FTCA claim outside § 2680(h), a pro se litigant should not lose jurisdiction by having his theory rewritten against him. At minimum, the court should have permitted limited development or clarification rather than terminating the case on a substituted jurisdictional theory.

## VII. This Court should not affirm on alternative Rule 12(b)(6) grounds not decided below.

The United States argued in response to the objections that even apart from § 2680(h), Appellant supposedly could not show extreme-and-outrageous conduct or damages without proving misrepresentation. ROA.531-534. Those alternative merits assertions confirm why the principal appellate relief should be reversal of the

Rule 12(b)(1) dismissal, not a bare recognition-only remand. Once the jurisdictional mischaracterization is corrected, any remaining merits defenses can be litigated in the ordinary course on remand rather than smuggled into an affirmance of a threshold dismissal.

*Brownback* does not authorize affirmance here, because *Brownback* followed an actual determination that the plaintiff's state-law tort claims failed on the merits, whereas the district court here made no Texas-law merits ruling at all and instead dismissed only on a substituted § 2680(h) characterization. *Brownback v. King*, 592 U.S. 209, 218 (2021); ROA.511; ROA.535-536.

Texas recognizes intentional infliction of emotional distress, its gap-filler limitation forecloses only repackaged claims whose gravamen is some other tort, and the amended complaint alleges intentional conduct, extreme and outrageousness, causation, and severe emotional distress sufficiently at least to preclude threshold alternative affirmance. *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004); *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740-41 (Tex. 2003); *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 617-19 (Tex. 1999).

This Court should not affirm on those alternative merits theories in the first instance. *Ruhrgas* and *Home Builders* supply the general rule that subject-matter jurisdiction ordinarily should be addressed first. *Dickson* illustrates why remand,

rather than alternative affirmance, is especially appropriate here: the district court did not evaluate Appellant's IIED theory under the correct jurisdictional frame, and unresolved issues not passed upon below ordinarily should be left for the district court in the first instance.

Service cannot support affirmance because the R&R expressly declined to reach Rule 12(b)(5), the district court adopted only the Rule 12(b)(1) dismissal, and any remaining Rule 4(i) issue belongs to the district court in the first instance, with the reasonable time to cure that Rule itself requires. Fed. R. Civ. P. 4(i)(4); ROA.511; ROA.535-536.

Nor does any Tucker Act / Court-of-Federal-Claims alternative displace this FTCA appeal, because claims seeking distinct relief under distinct jurisdictional grants do not collapse into one merely because some background facts overlap, and this case seeks tort damages for emotional injury rather than just compensation or contract-style relief. *Golden Pacific Bancorp v. United States*, 15 F.3d 1066, 1071-72 (Fed. Cir. 1994); *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1551-52 (Fed. Cir. 1994).

The Government's operative-pleading/page-limit objection is immaterial because this appeal rests on the amended complaint, the briefing directed to that complaint, and the objections the district court actually reviewed de novo, while no superseding-pleading or local-rule page-limit issue supplied any ground the R&R or

the district court adopted for dismissal. ROA.450-462; ROA.513-529; ROA.535-536.

There is no preservation problem. Appellant filed specific objections, argued that the R&R had redefined the case, and pressed for de novo review of that issue. ROA.513-528. Under 28 U.S.C. § 636(b)(1)(C), Rule 72(b), *Thomas v. Arn*, and Douglass, that was the correct method of preserving the issue. *Thomas v. Arn*, 474 U.S. 140, 149-50 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

And even under the Government's alternative merits framing, Appellant's allegations of causation and outrageousness do not depend on proving misrepresentation. The pleaded theory is that a senior official intentionally or recklessly disabled mandatory accountability before Appellant entered VA employment, preserved deniability at the point when traceable processing was required, and thereby helped set in motion a foreseeable sequence of institutional pressure that caused severe emotional harm. That is not a reliance element in disguise; it is the theory of the claim.

Courts ordinarily address subject-matter jurisdiction first. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-88 (1999); *Home Builders* Ass'n of Mississippi, Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998). Remand is therefore the proper course. The district court should first be required to evaluate

the claim actually pleaded, under the correct § 2680(h) framework, with favorable inferences and any necessary threshold development. Only after that should any remaining Rule 12(b)(6) issues be considered.

<h3 align="center"><u>CONCLUSION</u></h3>

The judgment should be reversed insofar as it holds that § 2680(h) bars the complaint as pleaded. The district court did not dismiss the IIED claim Appellant brought. It dismissed a substituted reliance-based misrepresentation theory constructed from selected background facts. That is the wrong inquiry.

The proper disposition is narrow. This Court need not decide whether Appellant ultimately proves IIED, whether any other defense may later apply, or whether any Rule 12(b)(6) argument has merit. It need only clear away the faulty § 2680(h) assumption, hold that the pleaded operational-omission theory is not facially barred as misrepresentation, and remand for the district court to evaluate the actual claim pleaded. That form of relief is tailored to the error and no broader than necessary.

Accordingly, Appellant respectfully requests relief that restores the case on a stronger footing than a generic remand. The Court should reinstate the complaint and return the case to the District Court under instructions that the pleaded claim must be evaluated as pleaded, not through a substituted reliance-based misrepresentation framework.

Requests for Relief:

1. **Reverse** the Rule 12(b)(1) dismissal to the extent it holds that § 2680(h) bars the claim as pleaded, and remand with instructions that the Government's § 2680(h) argument be evaluated against the operational-omission theory actually pleaded, not against a substituted reliance-based misrepresentation theory;

2. **Reinstate** the complaint and remand the case for further proceedings on the actual claim pleaded, under the correct legal framework and without recharacterizing that claim as a reliance-based misrepresentation or omission case;

3. **Instruct** that the claim be evaluated as pleaded, with favorable inferences drawn to Appellant at the pleading stage, and that any remaining merits issues or other defenses be addressed by the district court in the first instance rather than by appellate alternative affirmance;

4. If the Government continues to contest jurisdiction based on disputed facts concerning the operation and alleged bypass of the mandatory correspondence-accountability system, **Direct** that any further jurisdictional inquiry be limited, targeted, and confined to the actual theory pleaded rather than any substituted misrepresentation theory;

5. In the alternative, only if this Court concludes that further factual clarification is indispensable to jurisdiction, **Vacate and Remand** for narrowly tailored jurisdictional discovery directed to the actual operational-omission theory pleaded.

6. **Any and All additional Relief** as determined to be appropriate by the Court.

Respectfully submitted,

Koshy Mathews Mathai,

M.D. *Pro Se Appellant*

May 23, 2026

# CERTIFICATE OF SERVICE

I certify that on May 23, 2026, I filed the foregoing opening brief with the Clerk of the United States Court of Appeals for the Fifth Circuit using the Court's CM/ECF system, which served counsel for Appellee through electronic notice of filing.

/s/ *Koshy Mathews Mathai, M.D.*
Koshy Mathews Mathai, M.D.

May 23, 2026

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the portions exempted by Rule 32(f), it contains 6,727 words.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface in 14-point Times New Roman.

*/s/ Koshy Mathews Mathai, M.D.*
Koshy Mathews Mathai, M.D.


May 23, 2026